IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**RICHARD J. BOKKER**                                                                 **PLAINTIFF**

vs.                                        Civil No. 2:11-cv-02228

**MICHAEL J. ASTRUE**                                                                 **DEFENDANT**
Commissioner, Social Security Administration

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Richard J. Bokker ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Act.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), the Honorable P. K. Holmes, III referred this case to this Court for the purpose of making a report and recommendation. In accordance with that referral, and after reviewing the arguments of counsel, this Court recommends Plaintiff's case be **AFFIRMED.**

1.    **Background:**

Plaintiff protectively filed his current applications for disability on February 27, 2009.[1] (Tr. 10, 151-161). In his applications, Plaintiff alleges he is disabled due to Hepatitis C, rheumatoid arthritis in his back, and a degenerative bone spur. (Tr. 177). During the administrative hearing in this matter, Plaintiff also alleged being disabled due to rage, aggression, and headaches. (Tr. 40-49).

---

[1] Plaintiff previously filed two other applications which have been denied and are not before the Court in the present action. (Tr. 169).

Plaintiff alleges an onset date of September 4, 2008.[2] (Tr. 10, 151-161). These applications were denied initially and again on reconsideration. (Tr. 64-67).

Thereafter, Plaintiff requested an administrative hearing on his applications, and this hearing request was granted. (Tr. 89-96). An administrative hearing was held on April 14, 2010 in Fort Smith, Arkansas. (Tr. 24-63). At the administrative hearing, Plaintiff was present and was represented by Fred Caddell. *Id.* Plaintiff and Vocational Expert ("VE") Sarah Moore testified at this hearing. *Id.* On the date of this hearing, Plaintiff was forty-nine (49) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2008) (DIB) and 20 C.F.R. § 416.963(c) (2008) (SSI). (Tr. 31). Plaintiff also testified at the administrative hearing in this matter that he had obtained his GED. (Tr. 33).

On October 14, 2010, subsequent to this hearing, the ALJ entered an unfavorable decision on Plaintiff's applications. (Tr. 10-19). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 2008. (Tr. 12, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 4, 2008, his alleged onset date. (Tr. 12, Finding 2). The ALJ determined Plaintiff had the following severe impairments: degenerative disk disease of the thoracic and lumbar spine, anxiety, and cognitive impairments secondary to traumatic brain injury. (Tr. 12, Finding 3). The ALJ also determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 12-14, Finding 4).

---

[2] It appears this alleged onset date coincides with Plaintiff's release from prison. (Tr. 36). Plaintiff testified that he has been in prison five times for distributing and manufacturing drugs. *Id.* He testified at the administrative hearing in this matter that the last time he was in prison was in 2007, and he was released in September of 2008. *Id.*

The ALJ evaluated Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 14-17, Finding 5). In making this evaluation, the ALJ first considered Plaintiff's subjective complaints and found they were not credible to the extent he alleged. *Id.* Second, the ALJ found Plaintiff retained the capacity for the following:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb, balance, stoop, kneel, crouch, crawl, and reach overhead. Furthermore, he can understand, remember, and carry out simple, routine, and repetitive tasks, and can respond appropriately to supervisors, co-workers, the general public, and usual work situations.

*Id.* "Light work" includes the following:

> (B) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b) (2010).

Next, the ALJ evaluated Plaintiff's Past Relevant Work ("PRW") and found Plaintiff was unable to perform any of his PRW. (Tr. 17, Finding 6). The ALJ then determine whether Plaintiff retained the capacity to perform other work existing in significant numbers in the national economy. (Tr. 18-19, Finding 10). The VE testified at the administrative hearing regarding this issue. *Id.* Based upon that testimony, the ALJ determined Plaintiff retained the capacity to perform representative light, unskilled occupations such as small product assembler with 150 positions in Arkansas and 1,000 in the United States; machine tender with 1,500 positions in Arkansas and 118,800 in the United States; and inspector/tester with 1,000 positions in Arkansas and 76,000 in the

United States. (Tr. 18). Because Plaintiff retained the capacity to perform other work, the ALJ determined Plaintiff had not been under a disability, as defined by the Act, from September 4, 2008 through the date of his decision or through October 14, 2010. (Tr. 19, Finding 11).

On October 26, 2010, Plaintiff requested the Appeals Council's review of the ALJ's unfavorable decision. (Tr. 5-6). On November 9, 2011, the Appeals Council declined to review this disability determination. (Tr. 1-3). On November 30, 2011, Plaintiff filed the present appeal. ECF No. 10. Both Parties have filed appeal briefs. ECF Nos. 10-11. This case is now ready for decision.

**2.    Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2010); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year

and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3. **Discussion:**

In his appeal brief, Plaintiff raises the following two arguments for reversal: (A) the ALJ improperly evaluated his severe impairments; and (B) the ALJ improperly evaluated his RFC. ECF

No. 10. In response, Defendant denies these claims and argues substantial evidence supports the ALJ's RFC determination. ECF No. 11. This Court will address Plaintiff's arguments for reversal.

### A.     Severe Impairments

Plaintiff claims the ALJ improperly found his headaches, herniated thoracic spine, and impulse control disorder were not severe impairments. ECF No. 10 at 2. Plaintiff claims a "severe" impairment is "one that significantly limits the plaintiff's physical or mental ability to do basic work activities." *Id.* Plaintiff claims an impairment is only non-severe if it has "no 'more than a minimal effect on the claimant's ability to work.'" *Id.* Plaintiff claims that, under this standard, his headaches, herniated thoracic spine, and impulse control disorder all qualify as "severe." *Id.* In response, Defendant argues Plaintiff has not established these three impairments are severe. ECF No. 11.

As an initial matter, the ALJ determined Plaintiff had the following severe impairments: degenerative disk disease of the thoracic and lumbar spine, anxiety, and cognitive impairments secondary to traumatic brain injury. (Tr. 12, Finding 3). The ALJ did not specifically determine that his headaches, herniated thoracic spine, and impulse control disorder were severe. *Id.* Thus, the Court will evaluate whether the ALJ erred in determining they were non-severe.

First, Plaintiff alleges his headaches are severe. ECF No. 10 at 2. To support his claim that his headaches are a severe impairment, Plaintiff references one medical record dated December 16, 2007. (Tr. 254). This record is dated during the time he was incarcerated, and according to this record, he was reportedly suffering from headaches. *Id.* Plaintiff also references his traumatic brain injury from 2001 in support of this claim. (Tr. 316). Plaintiff, however, has not provided any treatment records demonstrating he sought treatment for these headaches. Apart from non-prescription Ibuprofen, Plaintiff also does not report taking any medication for these headaches. Upon review, considering this evidence, the Court finds these records and his claim he suffers from

6

headaches do not establish his headaches are severe. Accordingly, the ALJ did not err by finding his headaches were non-severe.

Second, Plaintiff claims the ALJ erred by finding his "herniated thoracic spine" was non-severe. Upon review, Plaintiff alleged in his application that he was disabled due to Hepatitis C, rheumatoid arthritis in his back, and a degenerative bone spur. (Tr. 177). Again, at the administrative hearing in this matter, Plaintiff described his back pain as "rheumatoid arthritis." (Tr. 49). Plaintiff did not allege in his disability applications or at the administrative hearing in this matter that he was disabled due to a "herniated thoracic spine." Thus, the ALJ was under no obligation to investigate this claim or find it was a severe impairment. *See Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir. 2003) (holding the ALJ is under no obligation "to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability"). Thus, the ALJ did not err by failing to specifically find this was a severe impairment.[3]

Third, Plaintiff alleges his "impulse control disorder" is a severe impairment. ECF No. 11. In his opinion, the ALJ found Plaintiff's anxiety and cognitive impairments secondary to traumatic brain injury were severe impairments. (Tr. 12, Finding 3). It appears this finding would also include consideration of symptoms from Plaintiff's alleged "impulse control disorder." Notably, in his application, he did not even allege this as a separate impairment. (Tr. 177). Thus, there is no indication the ALJ erred by failing to separately consider this impairment.

Further, and more importantly, Plaintiff has not demonstrated his "impulse control disorder" is severe. For an impairment to be considered "severe," that impairment must impact the claimant's

---

[3] Of course, in his decision, the ALJ found Plaintiff's "degenerative disk disease of the thoracic and lumbar spine" was severe (Tr. 12, Finding 3) and fully considered Plaintiff's alleged limitations due to his thoracic spine injury. (Tr. 17). Indeed, the ALJ even found Plaintiff's RFC was limited due to this impairment. *Id.* Thus, the ALJ did consider Plaintiff's back impairment.

ability to work. *See Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997). Here, as noted by the ALJ, Plaintiff's records do not demonstrate that he received treatment for this "impulse control disorder." (Tr. 16). Specifically, the ALJ stated, "a review of the claimant's treatment records show no reports of irritability, paranoia, or violent outbursts, and thus, I find that these allegations are not credible." *Id.* The only records Plaintiff has submitted in support of his claim that he suffers from an "impulse control disorder" are from Patricia J. Walz, Ph.D. (Tr. 441-444, 523-529). These records are dated July 17, 2001 with a follow-up on May 11, 2010. *Id.* As noted later in this opinion, the ALJ properly discounted Dr. Walz's findings. Accordingly, Plaintiff has not provided sufficient evidence demonstrating his "impulse control disorder" was severe or impacted his ability to work, and the ALJ did not err by finding this impairment was non-severe.

B.   **RFC Determination**

Plaintiff has raised several specific arguments regarding the ALJ's RFC determination. ECF No. 10. First, Plaintiff claims the ALJ erred "by failing to consider the ADC limitations of no prolonged walking or standing." ECF No. 10 at 2. Upon review, it appears Plaintiff is referring to a note from the jail nurse practitioner dated December 7, 2007. (Tr. 244). These alleged limitations were placed on Plaintiff while he was incarcerated. *Id.* Plaintiff, however, did not allege being disabled until nearly a year later or on September 4, 2008. (Tr. 10). Thus, this record is dated nearly a year before the relevant time period in this case, and it does not establish Plaintiff suffered from a disability during the relevant time period.

Further, turning to the substance of the record itself, the findings do not change the outcome of this case. It appears the ALJ did not reference these findings in his opinion. (Tr. 10-19). However, simply because the ALJ did not reference this record in his opinion does not establish that he did not consider it in evaluating Plaintiff's alleged disability. *See Hepp v. Astrue,* 511 F.3d 798,

806 (8th Cir. 2008) (holding "an 'arguable deficiency in opinion-writing technique' does not require us to set aside an administrative finding when that deficiency has no bearing on the outcome") (citation omitted).  The standard is whether the error has a bearing on the outcome of the case.  *Id.*  In this case, the Court finds this error does not have a bearing on the outcome of the case.  Indeed, because these limitations were placed upon Plaintiff by a nurse practitioner, they do not establish Plaintiff is disabled.  Only a licensed physician is an "acceptable source" for determining disability.  *See* 20 C.F.R. § 404.1513(a) (recognizing only a licensed physician as an "acceptable source" for determining a disability).  Thus, because these findings cannot establish Plaintiff is disabled, they do not impact the outcome of this case.[4]

Second, Plaintiff claims the ALJ erred by discounting the limitations Patricia Walz, Ph.D. placed on him.  (Tr. 441-444, 523-529).  The ALJ discounted her findings for the following reasons:

> However, I note that Dr. Walz indicated that she had based at least part of her assessment on the claimant's subjective reports of impulsivity and violent outbursts. (Exhibit 14F). As previously discussed, the claimant worked with these impairments in the past, there is no indication that they have worsened, and his treatment history does not support finding that his symptoms impose disabling limitations. Consequently, I find that Dr. Walz' opinion is not supported by the record as a whole and thus, give it weight only insofar as it is consistent with the residual functional capacity.

(Tr. 17).

Upon review of Dr. Walz's report, the Court finds the ALJ properly evaluated her findings.  As an initial matter, there is no treatment relationship between Dr. Walz and Plaintiff, as she only examined him on two separate occasions in July of 2001 and May of 2010.  Because there is no treatment relationship, her findings are not entitled to deference.  *See* 20 C.F.R. § 404.1527(c).  Also,

---

[4] Because these findings from this nurse practitioner support his claims, Plaintiff argues the ALJ should have relied upon them.  However, ironically, as noted later in this opinion, Plaintiff argues *against* the findings of another nurse practitioner because they undercut his claims, and Plaintiff even cites the rule that the nurse practitioner was not an "acceptable source" for determining disability.

Dr. Walz's findings do appear to be based upon an uncritical acceptance of Plaintiff's alleged rage and anger issues. Dr. Walz even stated her findings regarding his "impulse control disorder" were based upon Plaintiff's subjective complaints: "*He [Plaintiff] reports* continued problems with impulse control and anger management . . . ." (Tr. 529) (emphasis added).

In response, Plaintiff argues Dr. Walz did not uncritically accept his subjective complaints. ECF No. 10. Specifically, Plaintiff claims Dr. Walz "did not take is [his] subjective allegations at face value, but as a Ph.D., performed a Neuropsychological Evaluation, with a full battery of tests, including the MMPI-2, and did not opine that her results were invalid." ECF No. 10 at 15. Plaintiff is simply incorrect in this statement. In fact, Dr. Walz did a MMPI-2, the results of which were "*suggestive of possible exaggeration of symptoms*." (Tr. 529) (emphasis added). Such a finding indicates Plaintiff was not candid about his impairments and may have been exaggerating his symptoms. *Id.* This is also certainly no reason for finding Dr. Walz's opinions regarding his "impulse control disorder" were based upon anything more than an uncritical acceptance of Plaintiff's subjective complaints.

As a final point, because the ALJ provided valid reasons for discounting Dr. Walz's findings, the ALJ was not required to accept her findings. Plaintiff suggests in his briefing that the ALJ was required to accept her findings or his decision would be unsupported by substantial evidence: "In rejecting that assessment [Dr. Walz's], the ALJ was left with no other medical source statement on which to base is [his] RFC." This is incorrect. Plaintiff has the burden of establishing his RFC. *See Perks v. Astrue,* 687 F.3d 1086, 1092 (8th Cir. 2012) (citation omitted). In this case, Plaintiff alleges broadly that he suffers from rage and anger. (Tr. 40-49). Plaintiff has offered no treatment records


in support of his claim.[5]  As noted above, the ALJ properly found the only consultative examination Plaintiff has provided was not credible.  Thus, the Court finds Plaintiff has not met his burden of establishing any limitations on his RFC due to rage or anger or "impulse control disorder."

Third, Plaintiff claims the ALJ by relying upon the findings of a consultative examination which was performed by an nurse practitioner rather than a physician. ECF No. 10 at 15-17.  As an initial matter, the ALJ *did not* rely upon the findings contained in this consultative evaluation. (Tr. 15).  The ALJ stated the following:

> As for the opinion evidence, I find that the claimant is somewhat more limited than suggested by the April 2009 consultative examiner's report. (Exhibit 2F).  I note that while lumbar spine x-rays showed only mild degenerative changes, the claimant has additional limitations imposed by his thoracic spine (Exhibits 2F and 9F).  I find that this assessment is not consistent with the record as a whole and thus, *give it little weight*.

(Tr. 17) (emphasis added).

Interestingly, Plaintiff changes course in his briefing and acknowledges the fact the ALJ assigned little weight to the results from this consultative examination but argues that, because the ALJ did not adopt these findings, "the ALJ must have pulled the RFC out of thin air." *Id.*  This is also incorrect.  Upon review of the ALJ's decision, the ALJ fully evaluated his physical limitations, and the ALJ considered Plaintiff's medical records, including the results from Plaintiff's March of 2001 thoracic spine MRI and the results from Plaintiff's April of 2009 lumbar spine x-ray. (Tr. 15). The ALJ also fully considered the results of the consultative examination. (Tr. 15-17).  While Plaintiff disputes whether these results are from a "[s]ource[] who can provide evidence to establish

---

[5] In his briefing on this issue, the only treatment record Plaintiff references in support of his claim that he suffers from this "impulse control disorder" is from the River Valley Primary Care Services and is dated May 7, 2010. (Tr. 513).  During this appointment, he did report having problems with "anger issues" and reported having a "violent background." *Id.*  He also reported, however, that he was on a "[t]rial on mild sedation," which according to his spouse, dramatically *improved* his problems and "made him a different man." *Id.*  Thus, even according to this record, his "impulse control disorder" has improved.

an impairment,"[6] it is undisputed that this evidence can be considered as an "[o]ther source[]" "to show the severity of your [the claimant's] impairment(s) and how it affects your ability to work." *See* 20 C.F.R. § 404.1513(d). Accordingly, it was entirely proper for the ALJ to consider this evidence.

In evaluating his RFC, the ALJ also considered Plaintiff's subjective complaints and his lack of consistent medical treatment. (Tr. 14-17). As the ALJ noted, "the claimant has sought almost no related treatment since being released from prison." (Tr. 15). The ALJ also considered Plaintiff's extensive daily activities: "The claimant alleges that back pain limits his abilities, yet admitted to being able to clean, cook complex meals, shop for groceries, care for two young daughters, help his daughters with their homework, wash dishes, sweep, dust, fish regularly, and attend to his personal hygiene and grooming." (Tr. 15). The ALJ noted Plaintiff had never been prescribed anything greater than Ibuprofen for pain and had never had any further treatment recommended. (Tr. 15). The ALJ noted Plaintiff worked "only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical treatments." (Tr. 17). Again, Plaintiff has the burden of establishing his impairments limit his RFC. *See Perks,* 687 F.3d at 1092. Here, Plaintiff has not met his burden of establishing he was unable to perform light work.

### 4.     Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and recommends that it be **AFFIRMED**.

---

[6] Plaintiff claims he was not actually examined by Dr. Rebecca R. Floyd, M.D., the physician who signed the consultative examination report. (Tr. 288-292). Plaintiff instead claims he was examined by Marie Pham-Russell, APN, Nurse Practitioner and not Dr. Floyd. (Tr. 239). Because Plaintiff disputes this issue, the Court assumes without deciding that Plaintiff actually was examined by a nurse practitioner and not a doctor.

      **The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.  *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).**

      **ENTERED this 26th day of October 2012.**

      /s/   Barry A. Bryant  
      HON. BARRY A. BRYANT  
      U.S. MAGISTRATE JUDGE